## KNOXVILLE WATER COMPANY *v.* KNOXVILLE.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 212. Argued March 13, 1903.—Decided March 23, 1903.

The Knoxville Water Company was incorporated to construct waterworks near Knoxville with power to contract with the city and inhabitants for a supply of water and " to charge such price for the same as may be agreed upon between said company and said parties; " the general act under which the company was incorporated provided that it should not interfere with or impair the police or general powers of the municipal authorities, and they should have power by ordinance to regulate the price of water supplied by such company. The company in 1882 contracted for an exclusive privilege for thirty years to construct works, and after fifteen years to convey to the city at a price to be agreed upon or fixed by appraisal, and to " supply private consumers at not exceeding five cents per hundred gallons." Subsequently the city passed an ordinance reducing the price of water to private consumers below that rate. In an action to enforce penalties for overcharging the later rate,

*Held*, that there was no contract on the part of the city to permit the

charge named therein; and that the charter having been accepted subject to the provision of the general act reserving the power in the municipal authorities to regulate the price of water, the subsequent ordinance was not void either as impairing the obligation of a contract, or as depriving the company of its property without due process of law.

. THE case is stated in the opinion of the court.

*Mr. Charles T. Cates, Jr.,* for plaintiff in error. *Mr. Heber J. May* was with him on the brief.

*Mr. G. W. Pickle* for defendant in error. *Mr. J. W. Culton* was with him on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a complaint for a penalty against the Knoxville Water Company for charging and collecting water rates in excess of the rates fixed by the ordinances of the city of Knoxville. The water company pleaded that the ordinances relied on violated the obligation of contracts between the city and itself, and deprived it of its property and liberty without due process of law, and so was contrary to the Constitution of the United States. The case was tried on appeal before a single judge, who made a special finding of facts, on which the Supreme Court of the State entered a final judgment for the plaintiff. 107 Tennessee, 647. The company then brought the constitutional questions here by writ of error.

The water company was incorporated in Tennessee in 1882 to construct waterworks in or near Knoxville, with power to contract with the city and inhabitants for the supply of water, and to " charge such prices for the same as may be agreed upon between said company and said parties." This incorporation was under a general act which provides as follows : " And this Act is in no way to interfere with or impair the police or general powers of the corporate authorities of such city, town or village, and such corporate authorities shall have power by ordinance to regulate the price of water supplied by such company." Acts of 1877, c. 104, § 2. In the same year, 1882, the company made a contract with the city by which it agreed to

construct its works and to furnish water, the city gave the company exclusive privileges for thirty years and agreed to make certain payments, etc., and it was mutually agreed, among other things, that, after fifteen years, the city should have the right to purchase the works at a price to be fixed by appraisers if not agreed upon. The contract contained three distinct parts, first, the promises of the company; next, those of the city; and last, the mutual undertakings. In the first part the company undertook as follows: " Said company will supply private consumers with water at a rate not to exceed five cents per one hundred gallons," subject to an immaterial proviso. These are the words relied on by the company. They are assumed to contain an implied undertaking on the part of the city not to interfere with the company in establishing rates within the contract limits.

After the contract was made the company built its works and furnished water. Later it took over contracts between two other concerns and neighboring towns and consolidated with one of the other concerns, which was a corporation. The towns on their side were made a part of Knoxville and the whole water supply was brought under the original contract. But these facts do not alter or affect the present case and need not be stated in detail. The company went on furnishing water and charging rates within the contract limit, to the satisfaction of the city, it may be assumed, until within a year or two, when the city passed an ordinance which cuts down the rates which the company had been charging, and asserts its right to charge.

The trouble at the bottom of the company's case is that the supposed promise of the city on which it is founded does not exist. If such a promise had been intended it was far too important to be left to implication. In form the words of this part of the instrument are the words of the company alone. They occur in the part of the contract which sets forth the company's undertakings, not in the part devoted to the promises of the city or in that which contains the still later mutual agreements. See *Georgia Railroad & Banking Co.* v. *Smith,* 128 U. S. 174; *Ragan* v. *Aiken,* 9 Lea, 609. They are words

of a company which was notified by the act which called it into being of the power expressly conferred upon the city " by ordinance to regulate the price of water" which the company might supply. People who have accepted, as experience shows that people will accept, a charter subject to such liabilities cannot complain of them or repudiate them, nor can the company which they have formed. *Rockport Water Co.* v. *Rockport,* 161 Massachusetts, 279. This consideration answers a portion of the company's argument as to its rights under the Fourteenth Amendment, and makes it unnecessary to consider whether the regulation of water rates is properly to be classed as a police power. It also reinforces our interpretation of the instrument upon which the company founds its claim.

We do not mean that under other circumstances words which on their face only express a limit might not embody a contract more extensive than their literal meaning. *Detroit* v. *Detroit Citizens' Street Ry. Co.,* 184 U. S. 368. But in that case the rate was fixed by an ordinance which was the language of the city, the ordinance was under a statute which declared that the rates should be established by agreement between the city and the railway company, and neither statute nor ordinance reserved a power to the city to alter rates. In the present case it seems to us impossible to suppose that any power to contract which the city may have had was intended to be exercised in such a way as to displace the municipal power expressly reserved or given by the general law under which the water company was created. It would require stronger words than those used here to raise the question whether, under the statutes in force, the city could do it if it tried. The contracts fixing prices authorized by the statute were contracts between the company and its customers, not, as in the case of the railway company, a single contract between the company and the city, and were subject to the power to regulate them given to the city by the same statute. We assume that the charter of the city authorized it to contract, but it was not so specific as the statute which we have quoted, and added nothing to the power conferred by that law.

With the construction which we give the contract between the company and the city the argument that the obligation of

that contract is impaired must fall.    It is argued here that the
reduction of rates is not reasonable, and is or may be taking a
first step towards a compulsory purchase of the company's
plant at an unfairly low price, by cutting down its value.    We
may assume with the Supreme Court of Tennessee that if rates
were reduced unreasonably a judicial remedy would be found.
We may assume further that an attempt to affect the price of
the company's plant in that way, if the city should elect to
purchase, would not be allowed to succeed.    But no such ques-
tions are before us.    There is no evidence and no presumption
that the ordinance rates were unreasonable or were fixed with
sinister intent.    The judgment of the Supreme Court of Ten-
nessee states that the question was not considered by it, and is
expressed to be without prejudice to later litigation concerning
the reasonableness of the rates.    If the question is open here
it is open only in form, and no error is shown.

A part of the argument was directed against the validity of
the ordinance because of a failure to notify an alderman who
was out of the State, but we see no sufficient ground for under-
taking to revise the judgment of the state court on that point.

Some argument was attempted as to the ordinance impairing
the obligation of the contracts between the company and its
consumers.    But such contracts, of course, were made by it
subject to whatever power the city possessed to modify rates.
The company could not take away that power by making such
contracts.    *New Orleans* v. *New Orleans Water Works Co.*, 142
U. S. 79, 91, 92; *Browne* v. *Turner*, 176 Massachusetts, 9, 15.
The contracts recognize the possibility of change, as the agree-
ment is to pay for the water in accordance with the rates "now
or hereafter in force." This constitutional objection hardly is
open on the pleadings, but we have given the company the
benefit of the doubt so far as to consider it.    We discover no
error in the record, and the judgment of the Supreme Court of
Tennessee must be affirmed.

*Judgment affirmed.*


MR. JUSTICE WHITE, MR. JUSTICE MCKENNA and MR. JUSTICE
DAY, not having been present at the argument, took no part in
the decision of the case.