FT. SMITH LIGHT & TRACTION CO. v. CITY OF FT. SMITH et al.

(District Court, W. D. Arkansas, Ft. Smith Division. December 31, 1912.)

1. GAS (§ 14*)—GAS COMPANIES—MUNICIPAL REGULATION OF CHARGES.

A city having statutory authority to regulate the price charged its inhabitants for water, gas, and electricity by reducing any charge found on a hearing to be exorbitant does not surrender such power in respect to a gas company by granting it a franchise subject to the condition that it shall not charge to exceed $1 per thousand feet.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

2. GAS (§ 14*)—GAS COMPANIES—MUNICIPAL REGULATION OF CHARGES.

Where the statute giving the city such authority was in force when the franchise was granted, it became a part of the contract.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

3. MUNICIPAL CORPORATIONS (§ 591*) — POWERS — REGULATION OF PUBLIC SERVICE CORPORATIONS—CONTRACTS.

A city cannot by contract divest itself of power vested in it by the Legislature to regulate prices to be charged its inhabitants by gas companies, or other public service corporations.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1310; Dec. Dig. § 591.*]

4. Gas (§ 14*)—Charges—Temporary Restraining Order—Sufficiency of Showing.

Allegations in a bill by a gas company to restrain enforcement of an ordinance fixing rates that such rates are confiscatory, supported by uncontradicted affidavits showing that the company furnished gas at a loss under rates previously charged, which were higher than those fixed by the ordinance, are sufficient to entitle complainant to a temporary restraining order.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

5. Gas (§ 14*)—Gas Companies—Municipal Regulation of Charges—Validity of Ordinance.

Kirby's Dig. Ark. §§ 5445, 5446, authorize the council of any city or town on complaint to make such examination as necessary to determine whether or not rates charged by any water, gas, or electric company are reasonable, and, if found to be unreasonable, to fix such rates as it shall deem reasonable. They also require any person or company operating any such works or plant in a city or town to appear before the council or any committee as often as the council may deem necessary and exhibit the books of the business. *Held*, that the statute contemplates such an investigation by the council as will enable it to come to a just conclusion as to what price is reasonable to be charged, and that an ordinance arbitrarily fixing rates to be charged by a natural gas company, without making any examination of its books or ascertaining the value of its plant, the expense of maintenance, or the cost of operation, was beyond the power of the council, and void.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

In Equity. Suit by the Ft. Smith Light & Traction Company against the City of Ft. Smith, Fagan Bourland, Mayor, John Harrington, Police Judge, and Vincent M. Miles, City Attorney. On application for temporary restraining order. Motion granted.

Hill, Brizzolara & Fitzhugh, of Ft. Smith, Ark., for plaintiff.
Vincent M. Miles and J. F. O'Melia, both of Ft. Smith, Ark., for defendants.

YOUMANS, District Judge. This is an application for a temporary restraining order to restrain the city of Ft. Smith and its mayor, police judge, and city attorney from enforcing Ordinance No. 1053, passed by the council of the city of Ft. Smith on the 16th day of December, 1912, in which the maximum price at which natural gas may be sold to consumers in said city is fixed at 25 cents per thousand cubic feet. The application is based on the allegations of the bill filed herein, affidavits, and oral proof introduced by both plaintiff and defendants. No answer has yet been filed. The bill sets up three grounds on which the plaintiff relies for a temporary restraining order at this time, and a perpetual injunction at the final hearing: (1) That the rate fixed by Ordinance 1053 changes plaintiff's contract with the city as set out in the ordinance under which plaintiff sells natural gas in Ft. Smith, and that, therefore, said contract is impaired, in violation of section 10, art. 1, of the Constitution of the United States. (2) That the rate fixed by the ordinance is confiscatory, and therefore in violation of section 1 of the fourteenth amendment to the Constitution of the

United States, prohibiting the making or enforcing by a state of any law depriving any person of property without due, process of law. (3) That the ordinance was passed and the rate fixed without making the examination required by the statute of the state. Section 5445 and 5446 of Kirby's Digest.

The ordinance, the enforcement of which is sought to be enjoined, is as follows:

Ordinance No. 1053:

"An ordinance entitled an ordinance regulating the price of gas in the city of Fort Smith, Arkansas.

"Whereas more than five citizens of the city of Fort Smith, Arkansas, have filed with the city council a complaint alleging that the Fort Smith Light & Traction Company is charging an exorbitant price for the supply of gas to the citizens of Fort Smith, and

"Whereas the city council of the city of Fort Smith have made an examination to determine whether or not the prices charged are reasonable, and

"Whereas upon said examination it developed that the price charged by the Fort Smith Light & Traction Company for natural gas is unreasonable, said price being forty cents per one thousand feet with a deduction of five cents per thousand feet if paid by the 10th of the succeeding month for the amount consumed the month before, and

"Whereas it appears to the city council that the said Fort Smith Light & Traction Company have greatly raised their rates during the past twelve months; and

"Whereas it appears to the city council that the rate charged for natural gas in Fort Smith is much higher than that charged in nearby Oklahoma towns for natural gas, and

"Whereas it appears to the city council that twenty-five cents per thousand feet is a reasonable rate for natural gas,

"Therefore be it ordained by the city council of the city of Fort Smith, Arkansas,

"Section 1. That no person, firm or corporation, shall charge from and after the 1st day of January, 1913, more than twenty-five cents per thousand feet for natural gas.

"Sec. 2. Nothing contained in this ordinance shall be so construed as to prohibit any natural gas company from the right to charge and bill against the consumer a minimum charge of fifty cents each and every month when the amount of gas consumed in any month fails to amount to fifty cents.

"Sec. 3. That this ordinance shall be in full force and effect from and after its passage and publication, and that all ordinances or parts of ordinances in conflict herewith are hereby expressly repealed."

In passing this ordinance the council acted under the authority conferred by sections 5445 and 5446 of Kirby's Digest of the Statutes of Arkansas, which are as follows:

"Sec. 5445. The city council of any city or town in this state is hereby authorized when complaint is filed with them by five or more citizens of such city or town that any water company, gas or electric light plant, or any person, managing such water, gas or electric light plant, is charging an exorbitant rate for the supply of water, gas or electricity, to summons all such persons together with their books and make such examination as will be necessary to determine whether or not the prices charged for water, gas or electricity, is reasonable; and if upon examination the city council shall determine that the citizens, or any number of the citizens of such city or town is being charged an unreasonable price for water, gas or electricity, it shall be their duty to fix such prices to be paid for water, gas or electricity, as they may deem to be a reasonable charge.

"Sec. 5446. Any person, company or corporation now owning or operating, or who may hereafter own or operate any water, gas or electric light plant

in this state, situated in any of the cities or towns of this state, for the purpose of furnishing the inhabitants of such city or town with water, gas or electricity, is hereby required to appear before the city council or any committee thereof as often as such city council may deem necessary and exhibit the books of water, gas or electric light plant, and are hereby required to adopt such rates to be charged for water, gas or electricity as shall be fixed by the city council of such city or town."

Under the authority given by these sections, the city council of Ft. Smith, upon complying with the provisions therein contained, has the power to fix rates for the sale of natural gas, and such rates when legally fixed, and when not confiscatory, are legally binding on plaintiff, unless they are in conflict with a contract already made between the city and plaintiff which the city had authority to make.

It is alleged in the complaint that the plaintiff is selling natural gas in Ft. Smith under Ordinance No. 634, passed December 21, 1903, and that said ordinance provides that the price charged for natural gas should not exceed the sum of $1 per thousand cubic feet. It is contended by the plaintiff that this provision for a maximum rate of $1, together with certain other provisions in the ordinance requiring the grantee of the franchise, and his successors, to furnish gas free to certain public buildings, constitutes a contract which prevents the city from making a lower maximum than $1. This contention is not good for three reasons:

[1] (1) The city by the ordinance did not undertake to surrender any right or power it had. On the other hand, the grantee of the franchise in accepting the ordinance undertook to sell natural gas at a price not to exceed one dollar per thousand cubic feet, regardless of conditions. With reference to fixing the price of gas the ordinance was a limitation on the grantee of the franchise, and not upon the city. Knoxville Water Co. v. Knoxville, 189 U. S. 434, 23 Sup. Ct. 531, 47 L. Ed. 887.

[2] (2) The law giving municipalities the power to fix rates was in force at the time of the passage of the ordinance in December, 1903. It therefore became a part of the contract between the city and the plaintiff as the successor of the original grantee of the franchise. Arkadelphia Electric Light Co. v. Arkadelphia, 99 Ark. 178–186, 137 S. W. 1093.

[3] (3) The city could not by contract divest itself of the power conferred upon it by the Legislature. Cedar Rapids Gas Co. v. Cedar Rapids, 223 U. S. 655, 32 Sup. Ct. 389, 56 L. Ed. 594.

The plaintiff is therefore not entitled to a restraining order on the ground of impairment of a contract.

[4] It appears from the allegations of the complaint and the affidavits in support thereof that prior to May 1, 1912, the plaintiff had in force a certain scale of rates, which were increased on that day, the reason assigned being that the wells from which the supply of gas was obtained by the plaintiff were becoming exhausted. It is further alleged that the company sustained a loss on gas sold by it prior to May 1, 1912, and that the enforcement of the ordinance in question will compel it to sell gas at a loss in the future. These allegations are supported by affidavits filed by plaintiff, and were not controverted by affi-

davits or otherwise. They are sufficient to warrant the issuance of a temporary restraining order on the ground that the rate fixed by the ordinance is confiscatory. American Water Supply Co. v. Kankakee (C. C. A.) 199 Fed. 757.

[5] The third ground upon which plaintiff relies is based on the allegation that the council passed the ordinance in question without making the examination required by law. The sections of the statute under which the council of the city of Ft. Smith acted are not in violation of section 1 of the fourteenth amendment to the Constitution of the United States, because they authorize a fixing of rates only after examination and notice. The council cannot act arbitrarily. In this case the allegation is that the council did not, in fact, make the examination. The contention here is, in effect, that the fixing of rates without examination, under a valid state law requiring examination, is not only a violation of such law, but also a violation of the Constitution of the United States, and that arbitrary action under a valid law requiring the exercise of discretion upon investigation is as bad as arbitrary action under an invalid law. If a statute authorizes the fixing of rates arbitrarily, it is void. Chicago, Milwaukee & St. Paul Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970. If, under a statute authorizing the fixing of rates after investigation, the body authorized to act, after making an investigation, in fact acts without investigation, its action is void. San Diego Land Co. v. National City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154; Siler v. L. & N. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753; Louisiana R. Comm. v. Cumberland Tel. Co., 212 U. S. 414, 29 Sup. Ct. 357, 53 L. Ed. 577.

Justice must be done both to the public and the corporation, or individual whose rates are involved. This can be accomplished only by an investigation, after notice, of the factors which enter into the question of reasonable price. The public can demand no more. The corporation or individual can be accorded no less. The question of what the duty of the governing body of a state is in fixing rates under a valid law came before the Supreme Court of California in the case of Spring Valley Waterworks v. San Francisco, 82 Cal. 286, 22 Pac. 910, 1046, 6 L. R. A. 756; 16 Am. St. Rep. 116. The statute of that state required that the rates of compensation to be collected by any person, company, or corporation of that state for the use of water supply for any city or town, or inhabitant thereof should be fixed annually by the governing body of such town by ordinance or otherwise; that such ordinance should be passed in the month of February, each year, and take effect on the 1st day of July thereafter. The Legislature passed an act to put into effect that constitutional provision. The board of supervisors of San Francisco proceeded to fix rates under that act and provision of the Constitution. The Spring Valley Waterworks brought a suit in equity to enjoin the enforcement of the ordinance. Among other things its complaint alleged:

"That the rates purporting to be fixed by said ordinance or order were fixed arbitrarily at random, and by mere guesswork, without any consideration of or with regard to the right of plaintiff to a reasonable compensation for supplying water to said city and county and its inhabitants, or to a rea-

sonable income, or any income upon its investment, and without any consideration of or regard to the value of the plaintiff's works and property, or to the amount of its interest-bearing indebtedness, and the annual interest charge thereon, or its operating expenses, or the amount of taxes which it would be required to pay, or the right of the plaintiff's stockholders to reasonable or any dividends upon their stock, and without any reference to or consideration of the actual cost of supplying it water, but in total disregard of all such matters, and that in the passage or pretended passage of said ordinance or order the said board of supervisors acted wholly without jurisdiction, power, or authority, and in excess of their lawful jurisdiction, power, and authority."

A demurrer was filed to this complaint. The contention on the part of the city was that the courts had no power to set aside any order or ordinance of the board with regard to rates. The lower court overruled the demurrer, and, upon the refusal of the city to plead further, rendered a decree for the plaintiff. Upon appeal the Supreme Court of California said:

"It must be conceded in the outset that the use of water for sale is a public use, and that the price at which it shall be sold is matter within the power of the board of supervisors to determine. Munn v. Illinois, 94 U. S. 113 [24 L. Ed. 77]; Spring Valley Waterworks v. Schottler, 110 U. S. 347 [4 Sup. Ct. 48, 28 L. Ed. 173]. Indeed, this is not controverted by the respondent. The Constitution does not in terms confer upon the courts of the state any power or jurisdiction to control, supervise, or set aside any action of the board in respect to such rates. It may also be conceded, for the purposes of this case, that when the board of supervisors have fairly investigated, and exercised their discretion in fixing the rates, the courts have no right to interfere, on the sole ground that in the judgment of the court the rates thus fixed and determined are not reasonable. That such is the case is attested by numerous authorities. Nisbitt v. Board of Works, L. R. 10 Q. B. 10; Davis v. Mayor of New York, 1 Duer [N. Y.] 451–497; Munn v. Illinois, 94 U. S. 113 [24 L. Ed. 77]; Spring Valley Water Co. v. Schottler, 110 U. S. 347 [4 Sup. Ct. 48, 28 L. Ed. 173]; Chicago & N. W. Ry. Co. v. Dey [C. C.] 35 Fed. 866 [1 L. R. A. 744].

"But it seems to us that this complaint presents an entirely different question from this. The whole gist of the complaint is that the board of supervisors have not exercised their judgment or discretion in the matter; that they have arbitrarily, without investigation, and without any exercise of judgment or discretion, fixed these rates without any reference to what they should be, without reference either to the expense to the plaintiff necessary to furnish the water, or to what is a fair and reasonable compensation therefor; that the rates are so fixed as to render it impossible to furnish the water without loss, and so low as to amount to a practical confiscation of the plaintiff's property. If this be true, and the demurrer admits it, a party whose property is thus jeopardized should not be without a remedy. If the action of the board of supervisors was taken as the complaint alleges, they have not in any sense complied with the requirements of the Constitution, and their pretended action was a palpable fraud, which might result injuriously either to the plaintiff or the city and its inhabitants, and would almost certainly work injustice to one or the other. The Constitution does not contemplate any such mode of fixing rates. It is not a matter of guesswork or an arbitrary fixing of rates without reference to the rights of the water company or the public. When the Constitution provides for the fixing of rates or compensation, it means reasonable rates and just compensation. It does not follow, however, that, because no notice is necessary, the board are for that reason excused from applying to corporations or individuals interested to obtain all information necessary to enable it to act intelligibly and fairly in fixing the rates. This is its plain duty, and a failure to make the proper effort to procure all necessary information may defeat its action. Both the

corporation and the individuals furnishing the water, as well as the public, who must pay for its use, are entitled to an honest effort on the part of the board to obtain such information, and to have it act accordingly."

This case was quoted from and approved by the Supreme Court of the United States in the case of San Diego Land Co. v. National City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154.

In the case of San Diego Water Co. v. San Diego, 118 Cal. 556, 50 Pac. 633, 38 L. R. A. 460, 62 Am. St. Rep. 261, the Supreme Court of California had occasion again to pass upon the question of the duty of a governing body of a municipality in fixing water rates. Referring to the section of the state Constitution above mentioned, the court said:

"The meaning of the section is that the governing body of the municipality upon a fair investigation, and with the exercise of judgment and discretion, shall fix reasonable rates and allow just compensation. If they attempt to act arbitrarily, without investigation, or without the exercise of judgment and discretion, or if they fix rates so palpably unreasonable and unjust as to amount to arbitrary action, they violate their duty, and go beyond the powers conferred upon them."

In the case of Arkadelphia Electric Light Co. v. Arkadelphia, 99 Ark. 178, 137 S. W. 1093, it was held that:

"The rates having been fixed by the city council, which is given authority to investigate and determine reasonable rates, the presumption is that they are reasonable, and the burden of proof is upon the company to show affirmatively that they are not."

This is not a conclusive presumption, however. The council might so conduct its investigation, or might ignore or disregard essential facts to such an extent, as to overcome the presumption of the correctness of its decision. San Diego Water Co. v. San Diego, 118 Cal. 576, 50 Pac. 633, 38 L. R. A. 460, 62 Am. St. Rep. 261. What then must the council consider?

In the case of Smyth v. Ames, 169 U. S. 546, 18 Sup. Ct. 434, 42 L. Ed. 819, the Supreme Court of the United States said:

"We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And, in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of the public highway than the services rendered by it are reasonably worth."

In the case of San Diego Land Co. v. National City, 174 U. S. 757, 19 Sup. Ct. 811, 43 L. Ed. 1154, the same court said:

"The contention of the appellant in the present case is that in ascertaining what are just rates the court should take into consideration the cost of its

plant, the cost per annum of operating the plant, including interest paid on money borrowed, and reasonably necessary to be used in constructing the same, the annual depreciation of the plant from natural causes resulting from its use, and a fair profit to the company over and above such charges for its services in supplying the water to consumers, either by way of interest on the money it has expended for the public use, or upon some other fair and equitable basis. Undoubtedly all these matters ought to be taken into consideration, and such weight be given them when rates are being fixed as under all the circumstances will be just to the company and the public. The basis of calculation suggested by the appellant is, however, defective in not requiring the real value of the property and the fair value in themselves of the services rendered to be taken into consideration. What the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public. The property may have cost more than it ought to have cost, and its outstanding bonds for money borrowed and which went into the plant may be in excess of the real value of the property. So that it cannot be said that the amount of such bonds should in every case control the question of rates, although it may be an element in the inquiry as to what is, all the circumstances considered, just both to the company and the public."

In the case of Willcox v. Consolidated Gas Co., 212 U. S. 41, 29 Sup. Ct. 195, 53 L. Ed. 382, 15 Ann. Cas. 1034, the court said:

"There must be a fair return upon the reasonable value of the property at the time it is being used for the public."

In the case of the Lincoln Gas Co. v. Lincoln, 223 U. S. 357, 32 Sup. Ct. 272, 56 L. Ed. 466, the court said:

"In this, as in every other legislative rate case, there are presented three questions of prime importance: First, the present reasonable value of the company's plant engaged in the regulated business; second, what will be the probable effect of the reduced rate upon the future net income from the property engaged in serving the public; and, third, in ascertaining the probable net income, under the reduced rates prescribed, what deduction, if any, should be made from the gross receipts as a fund to preserve the property from future depreciation?"

In the case of Brymer v. Butler Water Co., 179 Pa. 231, 250, 36 Atl. 249–251 (36 L. R. A. 260), the Supreme Court of Pennsylvania said:

"Ordinarily, that is a reasonable charge or system of charges which yields a fair return upon the investment. Fixed charges and the costs of maintenance and operation must first be provided for. Then the interests of the owners of the property are to be considered. They are entitled to a rate of return, if their property will earn it, not less than the legal rate of interest; and a system of charges that yields no more income than is fairly required to maintain the plant, pay fixed charges and operating expenses, provide a suitable fund for the payment of debts, and pay a fair profit to the owners of the property, cannot be unreasonable."

In the case of the Kennebec Water District v. Waterville, 97 Me. 185, 204, 54 Atl. 6, 14 (60 L. R. A. 856), the Supreme Court of Maine said:

"The elemental principles thus far noted may be summarized as, on the one hand, the right of the company to derive fair income, based upon the fair value of the property at the time it is being used for the public, taking into account the cost of maintenance or depreciation, and current operating expenses; and, on the other hand, the right of the public to have no more exacted than the services in themselves are worth."

The law of this state empowers the city council to make such examination as will be necessary to determine whether or not the prices charged for water, gas, or electricity are reasonable, and, if upon examination the council shall determine that an exorbitant price is being charged, it will be its duty to fix such price to be paid as it may deem to be reasonable. Any person, company, or corporation owning or operating any water, gas, or electric lighting plant in any city or town of the state is required to appear before the city council, or any committee thereof, as often as such city council may deem necessary, and exhibit the books of the water, gas, or electric lighting plant. The law clearly contemplates such an investigation as will enable the council to come to a just conclusion as to a reasonable price to be charged. According to the allegations of the complaint and the evidence, no examination was made of the books of the plaintiff. The value of its plant used in the distribution and sale of gas was not ascertained; the cost of operation was not inquired into; no allowance was made for depreciation. If these allegations are true, the same conditions are present here as were present in the California cases above cited, and it was impossible for the council to form a just conclusion as to a reasonable price.

According to the testimony introduced by the city, the manager of plaintiff was asked to give a reason why the company increased its rate on May 1, 1912. As one of his reasons the manager said that a number of other cities were charging a higher rate. Thereupon he was told by the city attorney that the fact that such cities were charging a higher rate could not control in that inquiry. That was a correct statement of the law, but the council according to the evidence, and a recital of the ordinance, made controlling the fact that gas was being sold in nearby Oklahoma towns at a less rate. The fact that gas was being sold in certain towns at a greater rate did not in itself, in an inquiry as to its reasonableness, justify the plaintiff in increasing its rate. Nor did the fact, in itself, that gas was being sold in nearby Oklahoma towns at a less rate, justify the council in fixing a less rate than the one charged by plaintiff.

In the case of Smyth v. Ames, above cited, the Supreme Court said:

"It is said by the appellants that the local rates established by the Nebraska statute are much higher than in the state of Iowa, and that fact shows that the Nebraska rates are reasonable. This contention was thus met by the Circuit Court: 'It is, however, urged by the defendants that in the general tariffs of these companies there is an inequality, that the rates in Nebraska are higher than those in adjoining states, and that the reduction by House Roll 33 simply establishes an equality between Nebraska and the other states through which the roads run. The question is asked, Are not the people of Nebraska entitled to as cheap rates as the people of Iowa? Of course, relatively they are. That is, the roads may not discriminate against the people of any one state, but they are not necessarily bound to give absolutely the same rates to the people of all the states; for the kind and amount of business and the cost thereof are factors which determine largely the question of rates, and these vary in the several states. The volume of business in the one state may be greater per mile, while the cost of construction and maintenance is less. Hence, to enforce the same rates in both states might result in one in great injustice, while in the other it would only be reasonable and fair. Comparisons, therefore, between the rates of two states are of little value, unless all the elements that enter into the

problem are presented. It may be true, as testified by some of the witnesses, that the existing local rates in Nebraska are 40 per cent. higher than similar rates in the state of Iowa. But it is also true that the mileage earnings in Iowa are greater than in Nebraska. In Iowa there are 230 people to each mile of railroad, while in Nebraska there are but 190; and, as a general rule, the more people there are the more business there is. Hence, a mere difference between the rates in two states is of comparatively little significance.' [Ames v. Union Pac. Ry. Co. (C. C.)] 64 Fed. 165. In these views we concur, and it is unnecessary to add anything to what was said by the circuit court on this point."

In the case of Storrs v. Pensacola & A. R. Co., 29 Fla. 617, 11 South. 226, in passing on the question of reasonable rates as determined by comparison, the Supreme Court of Florida said:

"The allegation in the bill before us is that the rates are unreasonable and unjust when compared with rates permitted by the commissioners upon lines of railroad in the state of Florida existing and operating under the same conditions as those under which the road of appellee exists and operates, and an example is given in the rates fixed for the Florida Railway & Navigation Company and appellee which connect with each other. We are not informed of the facts upon which the commissioners fixed the rates for the other lines of railroad; nor is it even alleged that these rates are reasonable and just. Two roads may operate under the same conditions—that is, the same mode of existence, or the same state or situation, with regard to external circumstances—and still many things may exist in connection therewith and which would determine a reasonable rate for it different in amount from that of the other. The cost of construction, the length of the road, amount of traffic, and many other things may properly enter into a consideration of what is a reasonable rate."

In the case of Brymer v. Butler Water Co., above cited, the court said:

"Some towns are so situated as to make the procurement of an ample supply of water comparatively inexpensive. Some are so situated as to make the work both difficult and expensive. What would be an extortionate charge in the first case might be the very least at which the water could be afforded in the other."

It is alleged in the bill, and testimony was introduced by the plaintiff to show, that the field from which plaintiff obtained its supply of gas is becoming exhausted. On cross-examination by counsel for the city one of the witnesses was asked whether the determination of the question of the quantity of gas in the field was not speculative. The witness answered in the affirmative. Upon that answer counsel for the city urged that the company was not warranted in increasing its price because of the uncertainty of the fact of the exhaustion of the field. There does not seem to me to be any force in that argument. The logical conclusion from the uncertainty with regard to the question of supply is directly opposed to the argument made. In the case of the Kennebec Water District v. Waterville, above cited, the court said:

"There is another matter which we think may fairly be conceded in connection with the reasonableness of rates. We think something may be allowed in this respect for the risks of the original enterprise, if there were any. It is common sense that they who invest their money in hazardous enterprises may reasonably be entitled, for a time at least, to larger returns than would be the case if the success of the undertaking were assured from the beginning."

Uncertainty in any venture is always an element to be considered in fixing a price upon the product or results of that venture.

The allegations of the bill and the testimony warrant the issuance of a temporary restraining order on the ground of the failure of the council to make the investigation required by the law of the state. Siler v. Louisville & Nashville R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753.

The temporary restraining order will be issued upon the giving of a bond sufficient to protect all consumers paying the rate charged by the company, and the company will be required to furnish to consumers such evidence of payment as will enable them to determine readily and accurately the amount they may pay over and above the rate fixed by the ordinance.