FOURNET, Chief Justice.
 

 The plaintiff, United Gas Corporation, a Delaware corporation authorized to do business in Louisiana and engaged in distribuí
 
 *828
 
 ing and selling natural gas within the corporate limits of the City of Monroe pursuant to a franchise granted by that City for a term of twenty-five years from April 28, 1947, instituted' this suit on May 19, 1958, to enjoin the defendant City from enforcing the schedule of rates for the sale of gas contained in the franchise on the ground that the rates were non-compensatory and confiscatory and also from interfering with increased gas rates put into effect by the plaintiff. From a judgment of the District Court making absolute the rule for a preliminary injunction, and restraining and enjoining the defendant, its officers and agents from maintaining and enforcing the rates contained in the franchise as well as from prohibiting or in any way interfering with plaintiff in the assessment and collection of rates for natural gas service as set forth in a schedule attached to the petition “until other legal rates are established,” the defendant has appealed.' Certain public bodies (the Ouachita Parish School Board, the Monroe City School Board, and the Ouachita Parish Police Jury) have also appealed from the dismissal of their intervention by which they sought to have continued in effect the special franchise rates for gas sold to schools and certain public buildings.
 

 There is no dispute concerning the facts, which are that for a period of years beginning in 191.6 under franchise contracts which expired by their terms in 1946, the plaintiff had been supplying gas to the defendant City and its people; in anticipation of such expiration the Commission Council gave public notice inviting proposals for furnishing of natural gas to the City and only one bid was received, that of the plaintiff; the Commission Council (by Resolution dated June 14, 1946) stated that “for a number of reasons” the proposal was unsatisfactory and that the members were unable to recommend its acceptance and adoption, whereupon negotiations were begun between the City and plaintiff with the result that a franchise was drawn which was mutually acceptable. This was adopted by the Commission Council as a delayed ordinance and laid over until the proposition had been submitted to the voters at a special election on April 22, 1947, called pursuant to R.S. 33:552,
 
 [1]
 
 when it was’approved; the franchise, Ordinance No. 2858, was then formally adopted by the Council on April 28, 1947, subject to definitive written acceptance by the plain
 
 *830
 
 tiff, which was executed by letter dated May 12, 1947. A schedule of
 
 fixed
 
 rates for gas furnished under the terms of the agreement (with no provision for review, regulation or revision) is set out in detail in Section 4 of the Ordinance
 
 [2]
 
 — there having been eliminated from Section 4 of the rejected franchise a specific provision for rate regulation and revision from time to time by the Louisiana Public Service Commission. Service under the new franchise was continued for some eight years without incident.
 

 On July 1, 1955, the plaintiff filed with the Louisiana Public Service Commission a petition requesting that the Commission determine and fix just and reasonable rates for Monroe and certain other places in the surrounding area where natural gas was being furnished by United Gas Corporation, but following litigation the Commission was held by this Court to be without jurisdiction to fix rates within the City of Monroe;
 
 [3]
 
 the plaintiff then wrote, on June 21, 1957, to the Mayor and Commission Council of the City, and making reference to this Court’s ruling of June 10, 1957, it advised that the rates fixed by the franchise were confiscatory and that it desired an immediate hearing in order to present evidence to prove the need of increased rates;
 
 [4]
 
 but by Resolution of July 23rd the Commission Council refused the hearing on the ground that no useful purpose would be served by such action since the rates prescribed in the Ordinance
 
 *832
 
 contract were effective for the term of the agreement. Upon receipt of a certified copy of that Resolution the plaintiff formally filed with the said authorities “the new rate schedules for all gas hereafter used by its consumers in the City of Monroe,” and on the same day, July 25, 1957, by petition filed in the Federal district court, prayed for injunctive relief from enforcement of the rates fixed in the franchise or interference with the imposition of higher rates. That effort in its final outcome, however, was likewise unsuccessful,
 
 [5]
 
 and this suit followed.
 

 The plaintiff in its petition for a temporary restraining order, preliminary and permanent injunction, alleges that because of increasing costs the rates contained in the franchise of April 28, 1947, are now confiscatory and have been for several years past; that within the corporate limits of the City it operated at a loss for the years 1954, 1955 and 1956, and that additionally during this period the revenues had contributed nothing for depreciation and amortization expenses, nor was any return realized upon its investment in facilities; and that its property is being taken without due process of law in violation of State and Federal constitutional guarantees. The City’s exceptions of no cause of action and no right of action were referred to the merits. A petition of intervention and third opposition, filed by the Ouachita Parish School Board, Monroe City School Board and Ouachita Parish Police Jury, each asserting identity as a political subdivision and legal entity of
 
 *834
 
 the State, set forth that the rates for gas supplied to their respective buildings were specially fixed in the franchise, were contractual and binding on them and on United Gas Corporation, and prayed that both plaintiff company and defendant City be enjoined from interfering with the said rates. Plaintiff’s exceptions to this intervention (no right or cause of action) were referred to the merits. The defendant in its answer based its case on the binding effect of the contract terms, and the matter was then submitted on the pleadings and numerous exhibits — many of those offered by plaintiff consisting of lengthy written statements, explanatory of financial reports and the accounting principles employed in their preparation, made by plaintiff’s agents and employees in the form of answers to prepared questions and supported by affidavits that the answers were given by those persons to the best of their knowledge and belief. The district judge observed, after quoting excerpts from the jurisprudence of this Court and the Federal courts, that the rate making power is one of the highest attributes of sovereignty and is inherent in the state as an element of a police power which, under the Constitution of Louisiana, can never be irrevocably surrendered, but may be delegated; that under this Court’s holding in City of Monroe v. Louisiana Public Service Commission,
 
 [6]
 
 the power to make rates has been delegated to the City of Monroe; and concluded that “Inasmuch as the City of Monroe has the authority to fix rates for the welfare and benefit of its citizens it has the power to alter and revise these rates for the welfare and benefit of the people.” The defendant’s exceptions of no cause and no right of action were overruled, the intervenors were held to be not parties to the contract and plaintiff’s exception as to them was sustained, and the plaintiff was adjudged to be entitled to a preliminary injunction, as prayed, enjoining enforcement of the franchise rates as well as interference with the plaintiff in the collection of the suggested higher rates.
 

 The appellant City of Monroe assigns as error the lower court’s failure to' differentiate between a municipality’s acts when those acts are in a proprietary as opposed to a governmental capacity — arguing that in this case the municipality did not act under -its delegated governmental power because the rates embodied in the franchise ordinance were never imposed on plaintiff by compulsion, but on the contrary were the plaintiff’s own proposal, submitted as its bid to get the Monroe franchise; that when rates were established by the contract for a term, the proprietary power of the municipality was formally exercised and a valid and bind
 
 *836
 
 iiig contract as to both parties resulted. Counsel argue that the distinction between fixing of rates by contract and by compulsion, though universally recognized, could have no substance unless it be true that rates definitely fixed in the franchise ordinance must subsist for the term of the contract. It is also contended that a utility franchise ordinance which has been approved by vote of the people as to the grant of the franchise and the rates therein prescribed can be revised or amended, under the laws of this State, only by vote of the people;
 
 [7]
 
 and lastly, a plea of estoppel is based on plaintiff’s acts in having solicited the franchise, having itself proposed the rates, and having campaigned vigorously in the press urging the people to approve the ordinance as the means of preserving the same low rates established by franchise in 1916 and enjoyed by the citizens of Monroe for thirty years. Asserting in their brief that equitable estoppel must thwart the effort made to have the Court pervert the shield of sovereign police power, heretofore known in the protection of the public interest, to become the sword of a corporate utility, counsel conclude: “The essential fallacy of appellee’s claim here is that, finding its bargain onerous, it asks the Court for an exercise of police power to nullify its contract obligations
 
 in its own interest and to the detriment of the public.”
 

 Counsel for the plaintiff-appellee bases his argument in this Court on the provision of our Constitution which declares that “The exercise of the police power of the State shall never be abridged,”
 
 [8]
 
 and likewise relying on pronouncements found in the jurisprudence of the Federal courts and courts of this State, contends that said provision forbids a municipality which is vested with authority to fix rates for local public utilities from fixing irrevocable rates by contract, because this constitutes the surrendering or bartering away of its delegated police power. It is appellee’s position that the power to contract, in so far as rates are concerned, must remain at all times subject to revision upward or downward, for otherwise there is said to result an abridgement of the police power for the period of the contract. Proof of such result is evident, say counsel, from statements of this and other courts to the effect that rate-making
 
 *838
 
 power, whether exercised by agreement or by fiat of law, is within the police power of the state as one of the state’s highest attributes of sovereignty, and is never to be abridged nor irrevocably surrendered where there is, as in this State, a constitutional inhibition.
 
 [9]
 
 They also assert, as a proposition settled, beyond question, that “rates which do not yield a reasonable return upon the property used to render the public service are confiscatory, and their enforcement deprives the public utility of its property in violation of constitutionally guaranteed rights.” To appellant’s final argument, appellee refuses to accord serious consideration “when we think of parties creating unconstitutional contracts by estoppel.”
 

 The law governing the instant ■controversy has been enunciated in previous rulings of this Court, as a careful reading of certain cases will readily disclose, and those opinions will be discussed later. It is well, however, to preface the rule with a restatement of certain accepted principles which are applicable, and thus to provide a logical foundation for the result. Rate-making power, which belongs primarily to the Legislature as inherent in the sovereignty of the State, may be variously delegated to the municipalities.
 
 [10]
 
 Municipalities thus vested with the requisite authority may act in a dual capacity, governmental and proprietary, neither excluding the other;
 
 [11]
 
 however — and this is especially true in the field of rate making — municipalities are sometimes held to be without authority to act in one capacity or the other because of the fact that the power was never conferred,
 
 [12]
 
 or, having been con
 
 *840
 
 .ferred, was withdrawn.
 
 [13]
 
 Where the municipality, having the requisite power to act .in a
 
 governmental
 
 capacity, fixes rates by compulsion, the said power is exercised irrespective altogether of the consent of the public utility company, but the municipality has not the right to fix rates so low that the result is a confiscation of the utility’s property;
 
 [14]
 
 on the other hand, when rates are fixed by contract the municipality (conceding -its power to do so) has acted in a
 
 proprietary
 
 capacity, • and enforcement of the rates is governed by the terms of the agreement.
 
 [15]
 

 The rule was succinctly stated by Chief Justice White of the United States Supreme Court, author of the opinion in Southern Iowa Electric Company v. City of Chariton,
 
 [16]
 
 “Two propositions are indisputable : (a) That although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations [authorities]; and (b) that
 
 *842
 

 where,
 
 however,
 
 the public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that povaer by fixing by contract rates to govern during a partictdar time, the enforcement of s^lch rates is controlled by the obligation residting from the contract, and therefore the question of whether such rates are confiscatory becomes immaterial
 
 [authorities].” 255 U. S. at page 541, 41 S.Ct. at page 401, 65 L.Ed. at page 775. And Mr. Justice Day, speaking for the same Court in Columbus Railway, Power & Light Co. v. City of Columbus,
 
 [17]
 
 aptly observed: “That a city, acting under state authority, may, in matters of proprietary right, make binding contracts of the nature contained in these ordinances [25-year street railway franchise ordinances, to provide service at a fixed rate], is well established by the adjudications of this court. City of Vicksburg v. Vicksburg Waterworks Co., 206 U.S. 496, 27 S.Ct. 762, 51 L.Ed. 1155.” also, “We cannot agree with the contention of the appellant that these were permissive franchises, granted and accepted with the right upon the part of the company to abandon the uses and purposes for which the franchises were granted because the rates fixed became unremunerative, * * *. The authority under which the city acted came from the state, and was granted by proper statutes passed for that purpose.
 
 The contracts were made between the city and the company, and became mutually binding for the period named in the
 
 ordinances." 249 U.S. at page 409, 39 S.Ct. at page 352, 63 L.Ed. at page 676. Mr. Justice Holmes stated the alternatives clearly when he said (City of Opelika v. Opelika Sewer Company, 265 U.S. 215, 44 S.Ct. 517, 518, 68 L.Ed. 985, 986): “* * * It is to be taken that the present rates, which the plaintiff [Opelika Sewer Company] seeks to increase, are confiscatory unless the city has a right to insist upon them; and the question before us is whether the City has that right by contract, or whether its enforcement of them [the rates] deprives the plaintiff of its property without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States as alleged in the bill;” and the Court maintained the validity of the contract under the laws of Alabama. (Above emphasis supplied.)
 

 Our own Court, through Chief Justice Provosty, in treating at some length of the subject, quoted approvingly “the conclusion lucidly stated” by the Supreme Court of Oregon:
 
 [18]
 
 “‘The right of the
 
 *844
 
 state'to regulate rate by compulsion is a police power, and must not be confused with the right of a city to exercise its contractual power to agree with a public service company upon the terms of a franchise. The exercise of a power to fix rates by agreement does not include or embrace any portion of the power to fix rates by compulsion. When Woodburn granted the franchise to the telephone company, the city exercised its municipal right to contract, and it may be assumed that the franchise was valid and binding upon both parties until such time as the state chose to speak; but the city entered into the contract subject to the reserved right of the state to employ its police power and compel a change of rates, and when the state did speak, the municipal power gave way to the sovereign power of the state.’ ”
 

 The constitutional prohibition against a surrender or abridgement of the state’s police power (Art. 19, Sec. 18, La.Const. of 1921) was carefully reviewed in State v. City of New Orleans, 151 La. 24, 91 So. 533, wherein the Court gave the provision the following interpretation: “That does not mean that the police power of the state shall not be delegated to an administrative board or commission, or to a municipality or other political corporation. It means that the Legislature shall not irrevocably surrender the police power of the state, and that a delegation of any part of the police power to * * * a municipality or other political corporation,
 
 shall be always subject to revocation by the
 
 Legislature151 La. at pages 39-40, 91 So. at page 539; emphasis supplied. The same principle was again stated in State v. Gardner, 198 La. 861, 5 So.2d 132, in these words: “While the * * * police power * * * can never be surrendered, it is within the province of the legislature to delegate these powers to the various political subdivisions of the state and, in so doing, the legislature does not thereby surrender its power in this respect, for it is elementary that the legislature can thereafter, at any time, either change, alter, or recall the power so delegated.” 198 La. at page 865, 5 So.2d at page 133.
 
 [19]
 

 Counsel for plaintiff rely in particular on language found in the cases of Southern Iowa Electric Co. v. City of Chariton, supra, and City of Shreveport v. Southwestern Gas & Electric Co. (footnotes 10 and 12), but those cases afford no support; in.the former, the city council, under the state law as amended, was for
 
 *846
 
 bidden to bind the city to any rate for any future time, so that rates as fixed in the ordinance could not be enforced as the result of the obligation of a contract; and since they were concededly confiscatory, they could not be enforced under the city’s power of regulation; and the latter case contains a full exposition of the law as set out above. The emphasis placed by counsel on the statement therein that “Such a contract, we may mention in passing, would not be possible in this state in view of the constitutional provision forbidding the abridgement of the police power,” is entirely consistent with what is ■ said elsewhere, and refers to an “inviolable contract.” As we have said, a franchise ordinance of the kind with which we are here concerned, while binding between the parties, is always subject to the legislative will. It follows that plaintiff’s case is " without merit. We might also note the thought expressed in the opinion of the U. S. Supreme Court in the Columbus Railway, Power & Light Co. case, supra (249 U.S. at page 414, 39 S.Ct. at page 354, 63 L.Ed. at page 678): “There is no showing, as in the nature of things, there cannot be, that the performance of the contract, taking all the years of the term together, will prove unremunerative.”
 

 The decision we have reached makes it unnecessary to discuss the position taken by the intervenors since they also prayed that the demands of United Gas Corporation be denied.
 

 For the reasons assigned, the judgment appealed from is reversed, the preliminary" injunction issued herein is dissolved and set aside, and plaintiff’s suit is dismissed" at its cost.
 

 [1]
 

 . The pertinent paragraph of R.S. 33:552 declares: “ * * * ’ Every franchise or right to occupy or use the streets, highways, bridges, or public places shall be granted, renewed, or extended by ordinance. Every franchise for public serv- . ice utilities of the. municipality must be authorized or approved by a majority of the electors voting thereon at a special election called for that purpose by the co.uncil, except as provided in R.S. 33:-4431, R.S. 33:4433 and R.S. 33:4434 [not here applicable.].”
 

 [2]
 

 . “Section 4. Schedule of rates for gas furnished by Grantee under the provisions of this franchise ‘ shall be as follows :
 

 “1. Natural gas service * * * used in residences, individual family apartments and commercial establishments * * * 30^ gross;
 
 27‡
 
 net per Mcf for first 325 Mcf; 19<é net per Mcf for next 675 Mcf; 16^ net per Mcf for next 1,000 Mcf * * * ” etc. * * *
 

 “2. Natural gas service within the limits of the city of Monroe, to the city school system, the parish school system, denominational schools, the Northeast Junior College of L.S.U., the Ouachita Parish courthouse and the city operated public buildings, but excluding private, business or commercial schools, shall be at a rate of 15 cents for each 1,000 cubic feet of gas per month. * * * ”
 

 [3]
 

 . In a proceeding titled City of Monroe v. Louisiana Public Service Commission, the City of Monroe sought by injunction to restrain the Commission from entertaining the application filed by United Gas Corporation, and on appeal from a district court’s judgment adverse to the City, this Court held that the City of Monroe had the right under its Charter to prescribe rates at which gas should be supplied to its inhabitants, and therefore the Public Service Commission had no jurisdiction over rate-making power on distribution of gas within the corporate limits of the City. . See 233 La. 478, 522, 97 So.2d 56. Opinion on Second Rehearing rendered June 10, 1957.
 

 [4]
 

 .In that letter the Company advised that it had filed with the Louisiana Public Service Commission an amended petition (June 19, 1957) in Docket 6873 removing the City of Monroe from those proceedings which had for their purpose a revision of rates in the “Monroe Division;” stated that in said Docket No. 6873 it had submitted reasonable, just and non-discriminatory rates for the entire Monroe Division to be made immediately effective; and proposed that the
 
 *832
 
 same schedule of rates, a copy of which was annexed, be put into effect in the City of Monroe, in view of the studies which showed that the United Gas Corporation was operating in the City of Monroe “at an actual loss [for the year 1956] without making any return on its rate base, and failed to make a 6%% return on its rate base by the sum of $714,724.” Full access to the books and records of the Company was to be afforded the City’s authorized representatives “for the purpose of making any reasonable, relevant and fair investigation and audit of the operations of United Gas Corporation in the City of Monroe and in the Monroe Division.” A concluding paragraph stated that “The very substantial loss which United Gas Corporation has suffered for several years and its failure to make any return whatsoever on its investment * * * amounts to a confiscation of the properties of United Gas Corporation without due process of law in direct violation of the Fourteenth Amendment
 
 to the
 
 Constitution of the United States, as amended, and of the Constitution of the State of Louisiana, adopted in 1921, as amended.”
 

 [5]
 

 . In that litigation the United Gas Corporation obtained a preliminary injunction in the District Court for the Western District of Louisiana placing the new rates in effect (United Gas Corp. v. City of Monroe, D.C., 154 F.Supp. 667), but on appeal the U. S. Court of Appeal, Fifth Circuit, vacated the judgment and ordered the cause remanded with directions to dismiss the suit and remit parties to the State court. See City of Monroe, Louisiana v. United Gas Corporation, 253 F.2d 377, opinion dated March 12, 1958, rehearing denied April 30, 1958.
 

 [6]
 

 . 233 La. 478, 97 So.2d 56.
 

 [7]
 

 . Counsel cite and rely on R.S. 33:552 and 553. For the pertinent paragraph of the former, see footnote 1; the latter contains this provision: ‘ * * * An ordinance adopted by a vote of the people can be repealed or amended only by a vote of the people. The council, when petitioned to do so, shall submit a proposition for the repeal or amendment of the ordinance by special election in the same manner and form provided above in this Section. If the proposition to repeal or amend the ordinance receives a majority of the votes cast upon submission at the special election, the ordinance is repealed or amended accordingly. * * «! !>
 

 [8]
 

 . Art. 19, Sec. 18, La.Const. of 1921.
 

 [9]
 

 . Quotations to this effect are ascribed to the cases of City of Monroe v. Louisiana Public Service Commission, 233 La. 533, 97 So.2d 76, and Baton Rouge Waterworks Co. v. Louisiana Public Service Commission, 156 La. 539, 100 So. 710; also relied on are the cases of City of New Orleans v. O’Keefe, 5 Cir., 280 F. 92, and O’Keefe v. City of New Orleans, D.C., 273 P. 560.
 

 [10]
 

 . City of Shreveport v. Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365.
 

 [11]
 

 . "* * * * In its governmental or public character, the corporation is made, by the state, one of its instruments * * *. But in its proprietary or private character, the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the goverment of the state at large, but for the private advantage of the compact community .which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to * * * contracts made thereunder, the corporation is frequently regarded as having the rights and obligations of a private, rather than those of a public corporation. * * *” 37 Am.Jur. 727, Verbo Municipal Corporations, Sec. 114; to the same effect, City of Shreveport v. Southwestern Gas & Electric Co., supra, note 10.
 

 [12]
 

 . In City of Shreveport v. Southwestern Gas & Electric Co., supra, 151 La. 864, 92 So. 365, the municipality was held not to have power to impose a gas rate
 
 by compulsion.
 

 [13]
 

 . In Southern Iowa Electric Co. v. City of Chariton, 255 U.S. 539, 41 S.Ct. 400, 402, 65 L.Ed. 764, the right
 
 to contract
 
 as to rates for utilities, which right had been previously conferred by statute upon the municipality, by a subsequent revision and codification of the state laws was entirely eliminated, but the “legislative power to
 
 regulate
 
 rates was conferred upon the city council in all cases,” with the result that the rates fixed in an ordinance “were
 
 not fixed 6y contract.”
 
 (Emphasis supplied.)
 

 [14]
 

 . Reagan v. Farmers’ Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Covington & Lexington Turnpike Road Co. v. Sandford, 164 U.S. 578, 17 S. Ct. 198, 41 L.Ed. 560; Smyth v. Ames, 169 U.S. 466; 18 S.Ct. 418, 42 L.Ed. 819; San Diego Land & Town Co. v. Jasper, 189 U.S. 439, 442, 23 S.Ct. 571, 47 L.Ed. 892, 894; City of Knoxville v. Knoxville Water Co., 212 U.S. 1, 17, 29 S.Ct. 148, 53 L.Ed. 371, 381; Willcox v. Consolidated Gas Co., 212 U.S. 19, 41, 29 S.Ct. 192, 53 L.Ed. 382, 395, 48 L.R.A.,N.S., 1134, 15 Ann.Cas. 1034; Cedar Rapids Gas Light Co. v. City of Cedar Rapids, 223 U.S. 655, 32 S.Ct. 389, 56 L.Ed. 594; Simpson v. Shepard (Simpson v. Kennedy, and Simpson v. Shillaber [Minnesota Rate Cases]), 230 U.S. 352, 434, 33 S.Ct. 729, 57 L.Ed. 1511, 1555, 48 L.R.A.,N.S., 1151, Ann. Cas. 1916A, 18; Des Moines Gas Co. v. City of Des Moines, 238 U.S. 153, 35 S. Ct. 811, 59 L.Ed. 1244; City and County of Denver v. Denver Union Water Co., 246 U.S. 178, 194, 38 S.Ct. 278, 62 L. Ed. 649, 662.
 

 [15]
 

 . Freeport Water Co. v. Freeport, 180 U.S. 587, 593, 21 S.Ct. 493, 45 L.Ed. 679, 686; City of Detroit v. Detroit Citizens’ Street Ry. Co., 184 U.S. 368, 22 S. Ct. 410, 46 L.Ed. 592; Knoxville Water Co. v. City of Knoxville, 189 U.S. 434, 437, 23 S.Ct. 531, 47 L.Ed. 887, 891; City of Cleveland v. Cleveland City R. Co., 194 U.S. 517, 24 S.Ct. 756, 48 L.Ed. 1102; Home Telephone & Telegraph Co. v. City of Los Angeles, 211 U.S. 265, 273, 29 S.Ct. 50, 53 L.Ed. 176, 182; City of Minneapolis v. Minneapolis Street Ry. Co., 215 U.S. 417, 30 S.Ct. 118, 54 L. Ed. 259; Columbus Ry., Power & Light Co. v. City of Columbus, 249 U.S. 399, 39 S.Ct. 349, 63 L.Ed. 669, 6 A.L.R. 1648; see notes to St. Mary’s v. Hope Natural Gas Co., 71 W.Va. 76, 76 S.E. 841, 43 L.R.A.,N.S., 994, and Annotation in 6 A.L.R. at page 1659.
 

 [16]
 

 . Supra, note 13.
 

 [17]
 

 . 249 U.S. 399, 39 S.Ct. 349, 351, 63 L. Ed. 669, 6 A.L.R. 1648.
 

 [18]
 

 . The quotation is from Woodburn v. Public Service Commission, 82 Or. 114, 127, 161 P. 391, 395, L.R.A.1917C, 98, 105, Ann.Cas.1917E, 996, 1000, and appears in the case of City of Shreveport v. Southwestern Gas & Electric Co., supra, 151 La. at page 868, 92 So. at page 366, note 12.
 

 [19]
 

 . Thci cáse of State v. Bradford, 220 La. 176, 56 So.2d 145, contains this pertinent pronouncement: “* * * the validity of an ordinance of a political subdivision, enacted under police power del- ' egated to it, can be effective only so long as the Legislature sees fit to continue such power in the public body or to specially affirm and uphold the validity of ordinances passed pursuant to the delegated power in the event it is subsequently withdrawn. * * * ” 220 La. at page 180, 56 So.2d at page 146.